## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **WILLIAM T. HEBERT** and | ) | Case No. 09-48378 |
| **MARY A. HEBERT,** | ) | |
| | ) | Chapter 7 |
| Debtors, | ) | |
| | ) | Amended Complaint for |
| **VKH, LLC,** | ) | Determination Excepting Debt From |
| | ) | Discharge |
| Plaintiff, | ) | |
| | ) | Adversary Case No. 09-04249-705 |
| vs. | ) | Response Due: January 4, 2010 |
| | ) | Trial Date/Time: January 13, 2010 |
| **WILLIAM T. HEBERT** and | ) | Location: Thomas F. Eagleton |
| **MARY A. HEBERT,** | ) | United States Courthouse |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT FOR
## DETERMINATION EXCEPTING DEBT FROM DISCHARGE

COMES NOW plaintiff, VKH, LLC, by and through undersigned counsel, and for its amended complaint for determination excepting debt from discharge pursuant to 11 U.S.C. § 523 respectfully represents unto the Court as follows:

1.     VKH, LLC, hereinafter "Plaintiff," is a Missouri Limited Liability Company with the office of its registered agent located in Jefferson County, Missouri;

2.     Plaintiff is a creditor of the above-named debtors and is the holder of an unsecured claim in the amount of $105,947.28 plus interest at a rate of 9% per annum;

3.     William T. Hebert and Mary A. Hebert, hereinafter collectively "Defendants," are the debtors in the above captioned proceedings;

4.     This is an action under 11 U.S.C. § 523(c) for a determination excepting Plaintiff's debt from discharge.  This court has jurisdiction pursuant to 28 U.S.C. § 1334 and this complaint constitutes a core proceeding;

5.      On or about January 19, 2005, Plaintiff and CR Homes, Inc. entered into an agreement wherein Plaintiff did agree to lend CR Homes the principal sum of $77,000.00 for the purchase of a piece of real property commonly known as 329 Lagro, St. Louis, MO 63125, hereinafter "the property;"

6.      At all times herein defendant William T. Hebert was the president, registered agent, and sole shareholder of C.R. Homes, Inc.;

7.      At all times herein defendants William T. Hebert and Mary Ann Hebert were husband and wife;

8.      Due to this husband/wife relationship, at all materials times herein, defendant William T. Hebert and Mary Ann Hebert had a principal/agent relationship pursuant to Missouri Law;

8.      On or about January 19, 2005, in accordance therewith, defendant William Hebert, for and on behalf of defendant CR Homes, executed a promissory note in favor of Plaintiff agreeing therein to repay the principal sum, with interest at a rate of 12% per annum, in quarterly installments, beginning on April 19, 2005.  A copy of the promissory note is attached hereto as Exhibit 1 and incorporated herein by reference;

9.      On or about January 19, 2005, defendant William Hebert, for and on behalf of defendant CR Homes, executed a Deed of Trust securing Plaintiff's interest in the property and materially and falsely represented to Ms. Shirley Harrell, the managing member of plaintiff VKH, LLC, that he would record the Deed of Trust with the St. Louis County Recorder of Deeds on Plaintiff's behalf.  A copy of the Deed of Trust is attached hereto as Exhibit 2 and incorporated herein by reference;

10.     Plaintiff did lend CR Homes the principal sum, and CR Homes did purchase the property;

11.     Defendant William Hebert failed to record the Deed of Trust as promised with the intent to deceive Plaintiff and to fail to protect their interest in the property;

12.     Plaintiff justifiably relied on defendant William Hebert's representation that he would record the Deed of Trust;

13.     As a direct and proximate result of defendant William Hebert's intentional misrepresentation, Plaintiff has sustained pecuniary damage, including lost interest income, courts costs, and attorney's fees, as more fully demonstrated *infra*;

14.     CR Homes sold the property on or about June 16, 2006, and received approximately $96,000 in proceeds from the sale;

15.     Defendants did not pay over to Plaintiff any of the proceeds of the sale;

16.     On or about April 27, 2007, Plaintiff filed a two count Petition against CR Homes and defendant William Hebert, alleging breach of contract and fraud, styled *VKH, LLC v. CR Homes, Inc. et al.,* St. Louis County Case No. 07CC-001743;

17.     CR Homes and defendant William Hebert were each served with summons but failed to appear or otherwise respond to the allegations;

18.     On August 1, 2007, Judge Michael T. Jamison entered a Default Judgment against CR Homes and defendant William Hebert, jointly and severally, for the principal amount of $84,765.13 plus $1,764.65 in attorney's fees with interest to accrue at the statutory rate of 9% per annum.  A copy of the Default Judgment is attached as Exhibit 3 and incorporated herein by reference;

19.     Plaintiff was unable to execute the Default Judgment via either attachment, execution and/or garnishment, as Defendants, with the intent to hinder, delay, and/or defraud their creditors, made a series of transfers so as to hide and/or dispose of all of the assets of the judgment debtors William Hebert and/or CR Homes;

20.     Assets of either CR Homes or defendant William Hebert were transferred into the names of William Hebert and Mary A. Hebert jointly, or into the name(s) of limited partnerships and/or corporations wholly under the control of Defendants;

21.     Such transfers were made with the intent to hinder, delay, or defraud a creditor as, among other things: (a) Defendant William Hebert retained possession and/or control of the properties after their transfer; (b) the transfer was not disclosed to defendants' creditors; (c) before the transfers were made, defendants CR Homes and William Hebert were aware of the likelihood of the filing of suit by Plaintiff; (d) Defendants transferred substantially all of CR Homes' assets; (e) CR Homes and defendant Williams Hebert concealed assets from Plaintiff; (f) the value received by the transferor in these transactions was not reasonably equivalent to the value of the subject property; (g) CR Homes and/or defendant William Hebert was insolvent at the time of, or became insolvent as a result of, the transfers; and (h) the transfer occurred in close proximity to the timing of the defendants' intentional defrauding of Plaintiff;

22.     Said transfers were completed without receiving a reasonably equivalent value in exchange for the transfer or obligation;

23.     At the time of the transfers defendants CR Homes and William Hebert: (1) Were engaged or were about in engage in a business or transaction for which the remaining assets of those defendants were unreasonably small in relation to the business or transaction, and/or (2) Intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they came due;

24.     Such transfers include, but are not limited to:

a:      The December 2006 transfer of a piece of real property located in St. Louis City, commonly known as 2932 Hickory Street, St. Louis, MO

63104, from the name of William Hebert individually to William Hebert and Mary Ann Hebert jointly as husband and wife. Said transfer was made via a Quit Claim Deed for nominal consideration;

b:      The July 2005 transfer of a piece of real property located in St. Louis County, commonly known as 6803 St. Olaf Drive, St. Louis, MO 63134, from CR Homes, Inc. to William Hebert and Mary Ann Hebert jointly as husband and wife. Said transfer was made via a Quit Claim Deed for nominal consideration;

c:      The December 2005 transfer of a piece of real property located in St. Louis County, commonly known as 9713 Hemlock Drive, St. Louis, MO 63137, from CR Homes, Inc. to the Kyleton Limited Partnership, hereinafter "Kyleton," an entity created and under the control of defendant William Hebert. This same property had been transferred into the name of CR Homes by defendant William Hebert, and was transferred from Kyleton to William Hebert and Mary Ann Hebert jointly as husband and wife. Each of these transfers were made by Quit Claim Deed for nominal consideration; and

d:      The July 2005 transfer of a piece of real property located in St. Louis County, commonly known as 8616 Betty Lee Avenue, from CR Homes, Inc. to William Hebert and Mary Ann Hebert jointly as husband and wife. Said transfer was made via a Quit Claim Deed for nominal consideration;

25.      Based on the foregoing unlawful and fraudulent transfers, on or about February 21, 2008, Plaintiff filed a Petition against CR Homes and both Defendants asserting a claim of violation of the Missouri Uniform Transfers Act, § 428.005 et seq.

R.S.Mo., styled *VKH, LLC v. CR Homes, Inc. et al.,* St. Louis County Case No. 08SL-CC00769;

26.      On March 30, 2009, Plaintiff entered into a Consent Judgment with both Defendants and CR Homes, Inc. in which Defendants agreed to a total judgment against them, jointly and severally, of $105,947.28, with said judgment to be stayed upon payment to Plaintiff of $2,207.24 per month for forty-eight months. A copy of the Consent Judgment is attached hereto as Exhibit 4 and incorporated herein by reference;

27.      The judgment remains unpaid and Defendants have ceased making payments;

28.      By reason of these actions Defendants committed actual fraud on Plaintiff in the transaction described more fully *supra*, and are attempting to utilize the mechanics of the Bankruptcy Code to further perpetrate such fraud;

29.      On or about August 26, 2009, Defendants filed their petition for relief under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Missouri, and Defendants listed as one of their debts the obligation due to Plaintiff;

30.      By reason of the actual fraud perpetrated by Defendants on Plaintiff, the debt owed to Plaintiff by Defendants is not dischargeable pursuant to 11 U.S.C. 523(a)(2)(A).

WHEREFORE, plaintiff VKH, LLC respectfully prays that this Honorable Court enter its Order and determine that the debt on which Plaintiff's claim is based is a debt which may be excepted from discharge, after notice and a hearing, pursuant to 11 U.S.C. § 523(c).

Dated: December 23, 2009

Respectfully submitted,

ANDERSON & GILBERT, L.C.


    /s/ Dennis S. Harms
Francis X. Duda     #6761
Dennis S. Harms     #533425
515 Olive Street, Suite 704
St. Louis, MO  63101
(314) 721-2777
(314) 721-3515 (Fax)
fxduda@anderson-gilbert.com
dsharms@anderson-gilbert.com

Attorneys for Plaintiff

## Certificate of Service

       The undersigned hereby certifies that a true and accurate copy of the foregoing was sent this 23rd day of December, 2009, via the electronic noticing ECF/CM system of the U.S. Bankruptcy Court for the Eastern District of Missouri or via U.S. Mail, postage prepaid, to:

William T. Hebert           Lawrence F. Hartstein
17 Beaujolais               130 S. Bemiston, Suite 608
Florissant, MO 63031       St. Louis, MO 63105

Attorney for Mary Ann Hebert

    /s/ Dennis S. Harms

# PROMISSORY NOTE

### 329 Lagro, St. Louis, MO 63125 (Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $77,000.00 (this amount is called "principal"), plus interest as required under this Note, to the order of the Lender. The Lender is VKH, LLC, 3511 Upper Plattin Road, Desoto, MO 63020.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged at an annual rate of Twelve per cent (12%) in the event of timely payments. "Timely payments" mean a payment received by the Note Holder on or before the date shown in paragraph 3(A). After the Maturity Date or upon acceleration of the loan (as later defined), interest on the overdue unpaid principal shall be due and payable at a rate per annum equal to the lesser of (a) the highest rate permitted by law, or (b) 15% per annum.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay interest by making payments every three months. I will make quarterly interest payments on the 19th day of every third month (the "Due Date") beginning on April 19, 2005.

I will make these payments until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My payments will be applied to interest before principal. If, on January 19, 2010, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will send my payments to VKH, LLC, 3511 Upper Plattin Road, Desoto, MO 63020, or at a different place if required by the Note Holder.

### (B) Amount of Payments

My payment will be in the amount of U.S. $2,310.00.

### (C) Escrow Account

Provided this paragraph contains a dollar amount for purpose of establishing an Escrow Account, in addition to the payments of principal and interest as set forth in paragraph 3(B), the undersigned further agrees to pay No dollars ($0.00) per month to be applied toward paying before delinquency, the general and special taxes against the real estate and the premiums on insurance policies securing this Note, and any additional amount which may be required to pay any or all of the above mentioned items.

## 4. BORROWER'S RIGHT TO PREPAY

Provided I am not in default as defined in paragraph 6, I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my quarterly payment unless the Note Holder agrees in writing to those changes.



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any quarterly payment by the end of 10 calendar days after the Due Date, I will pay a late charge to the Note Holder. The amount of the charge will be equal to 5% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount on the Due Date, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder will send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least thirty (30) days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at 7919 North Lindbergh Blvd., Hazelwood, MO 63042 or at a different address if I give the Note Holder notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

**(A)** I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**(B)** No delay or omission on the part of the Note Holder in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or of any other right or remedy under this Note. A waiver on one occasion shall not be construed as a bar to, or waiver of, any such right or remedy on any future occasion.

## 10. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage/Deed of Trust (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.

## 11. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of accerlation. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this security instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MODIFICATIONS

The Note Holder must consent, in writing, to any modification or extension of time (whether one or more) of payment hereof.

**DATED: January 19, 2005.**

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED**

Borrower — William Hebert, President, C. R. Homes, Inc.

STATE OF     Missouri
COUNTY OF  St. Louis

Before me personally appeared William Hebert to me well known and known to me to be the person described in and who executed the foregoing instrument, and acknowledged to and before me that he executed said instrument for the purposes therein expressed.

WITNESS my hand and official seal in the State and County aforesaid, this 19th day of January, 2005.

(Seal)

Notary Public
State of _Missouri_
My Commission Expires: _April 28, 2008_

Vicky M Schmalzried
Notary Public - Notary Seal
State of Missouri
County of St. Louis
Expires April 28, 2008

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on January 19, 2005. The **Grantor** is C.R. Homes, Inc. ("Borrower").

The **Trustee** is David Townsend ("Trustee").

The **Grantee** is VKH, LLC, whose address is 3511 Upper Plattin Road, Desoto, MO 63020 ("Lender").

Borrower owes Lender the principal sum of Seventy seven thousand and no/100 Dollars (U.S. $77,000.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for quarterly payments, with the full debt, if not paid earlier, due and payable on January 19, 2010. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in County of St. Louis, Missouri:

> Lot 25 in Block 2 of McDermott's Subdivision of Hoffmeister Heights, a Subdivision of Block 127 of Carondelet Commons South of the River Des Peres, in St. Louis County, Missouri, as per plat therof recorded in Platt Book 4 page 97 of the St. Louis County Records, fronting 50 feet on the North line of Lagro Avenue, by a depth Northwardly of 146 feet.

which has the address of 329 Lagro, St. Louis, MO 63125 ("Property Address"); mailing address is 7919 North Lindbergh, Hazelwood, MO 63042

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:



**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Taxes and Insurance.** Borrower will promptly pay all taxes, charges and assessments lawfully levied against the above described land; upon their failure to do so then the said Trustee herein or the holder of any obligation hereby secured may pay the same, or any part thereof remaining
unpaid, and any amount so paid shall bear interest at the maximum rate allowed by law from the date of such payment and shall be and become secured by this deed of trust.

Borrower will keep the buildings on the land herein described insured in some good and solvent company or companies satisfactory to the Trustee, against loss or damage by fire, lightning, or storm, in an amount not less than the amount secured hereby plus prior liens, with standard mortgage clause attached for the benefit of Lender as its interest may appear, and maintain said insurance and deliver the policy or policies to the beneficiary under this trust, and upon the failure of said grantors to procure such insurance or to pay the premiums thereon when procured, the Trustees herein or the holder of any note hereby secured, may procure such insurance and pay the premium on the policy procured by the parties of the first part hereto, and any sum so paid shall bear interest at the note interest rate from the date of such payment and shall be and become secured by this trust deed.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under paragraph 2; fourth, to interest due; and last, to principal due.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contest in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien .?In agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt written notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a

notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the quarterly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6.    Preservation and Maintenance of Property; leaseholds.** Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

**7.    Protection of lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable with interest, upon notice from Lender to Borrower requesting payment.

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect .until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

**8.    Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**9.    Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument whether or not then *duel* with any excess paid to Borrower. In the event of a partial taking of the Property unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the quarterly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**10.   Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor

in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**12. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**13. Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws ha_ -the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by paragraph 19. If Lender exercises this option, Lender shall take the steps specified in the second paragraph of paragraph 17.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by prior written notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower and Trustee. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of the Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if beneficial interest in Borrower is sold. or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraphs 13 or 17.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraphs 13 and 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give Borrower, in the manner provided in paragraph 14, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law, and, when required by applicable law shall cause such notice to be served personally upon Borrower or other persons. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the property at any sale.

Trustee shall deliver to the purchaser a Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**20. Lender in Possession.** Upon acceleration under paragraph 19 or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

**21. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall release this Security Instrument without charge to Borrower. Provided, however, borrower shall pay any recordation costs.

**22. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a Successor Trustee to any Trustee appointed hereunder by an instrument recorded in the county in which the property is located, or by any other manner provided for by law. Without conveyance of the Property the Successor Trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law. Trustee may resign for any reason without further liability to Borrower or Lender by providing thirty (30) days notice to Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

**DATED: January 19, 2005.**

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

William Hebert, President, C. R. Homes, Inc.

STATE OF        Missouri
COUNTY OF     St. Louis

Before me personally appeared William Hebert to me well known and known to me to be the person described in and who executed the foregoing instrument, and acknowledged to and before me that he executed said instrument for the purposes therein expressed.

WITNESS my hand and official seal in the State and County aforesaid, this 19th day of January, 2005.

(Seal)

Notary Public
State of Missouri
My Commission Expires April 28, 2008

Vicky M Schmelzried
Notary Public - Notary Seal
State of Missouri
County of St. Louis
Expires April 28, 2008

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI



FILED

AUG 0 1 2007

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

VKH, LLC,                          )
                                   )
          Plaintiff,               )
                                   )        Case No.:    07CC-001743
v.                                 )
                                   )        Division:    10
C R HOMES, INC., et al.            )
                                   )
          Defendants.              )

## DEFAULT JUDGMENT

Plaintiffs appear by and through counsel to present evidence of damages in support of a final Default Judgment pursuant to Plaintiff's Motion for Default against Defendant C R Homes, Inc. and Defendant William Hebert.

The Court takes judicial notice of its file and makes the following Findings of Fact and Conclusions of Law:

1.    That William Hebert, President of Defendant C R Homes, Inc. was personally served with a copy of Plaintiffs' Petition and Summons in this matter on June 22, 2007.

2.    That Defendant William Hebert was personally served with a copy of Plaintiffs' Petition and Summons in this matter on June 22, 2007.

3.    That both Defendants C R Homes, Inc. and William Hebert have failed to Answer or otherwise respond to Plaintiffs' Petition within 30 days from the date of said service and the time permitted by law.

4.    That Plaintiff's Motion for Default is properly filed and before this Court.

5.    That Plaintiff appears by its Managing Member and counsel and Defendants fail to appear.



1

6. That on January 19, 2005, Defendant William Hebert executed a Promissory Note on behalf of Defendant C R Homes, Inc. in the principal amount of $77,000.00 with principal and interest at 12% per annum to purchase real property located at 329 Lagro, St. Louis, MO 63125 in St. Louis County, Missouri.

7. That on January 19, 2005, Defendant William Hebert executed a Deed of Trust on behalf of Defendant C R Homes, Inc. securing its obligations under the aforesaid Promissory Note with the aforesaid real property.

8. That the terms of the Note call for a late charge of 5% on any payment of principal and interest that Defendant fails to make in a timely manner.

9. That upon default under the Note, Plaintiff is entitled to accelerate the total balance due and to charge interest thereon at the legal rate until such balance of principal and interest is paid.

10. That the terms of the Note entitle Plaintiff to collect its expenses and attorneys' fees incurred in enforcing the terms of said Note.

11. That at the time of executing said Deed of Trust, Defendant William Hebert individually represented to Plaintiff that he would record said Deed of Trust with the St. Louis County Recorder of Deeds, thereby completing the security of payment of said Note.

12. That in fact, Defendant William Hebert intentionally failed to record said Deed of Trust, did not tell Plaintiff and shortly thereafter sold the aforesaid real property without paying off said Note as required by said Deed of Trust and thereby did intentionally defraud Plaintiff.

13. That Defendant C R Homes, Inc. is in default of said Note and Deed of Trust and Plaintiff has been damaged thereby.

14. That Defendant William Hebert intentionally and maliciously defrauded Plaintiff and Plaintiff has been damaged thereby.

15. That Plaintiff has incurred litigation expenses and attorneys' fees in enforcing said Note.

16. That Defendant C R Homes, Inc. is in default of said Note in the total amount of $ 84,765.13.

17. That Plaintiff is entitled to interest on said amount at 9% per annum.

18. That Plaintiff has incurred costs litigation expenses and attorneys fees in the amount of $ 1,764.65 which are fair and reasonable.

19. That Defendant William Hebert's actions were willful and malicious and said Defendant should be punished for said actions.

NOW THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED that:

Plaintiff have and recover a JUDGMENT against Defendant C R Homes, Inc. on Count I of Plaintiff's Petition for Breach of Contract the principal amount of $ 84,765.13 plus interest on said amount at 9% per annum until paid, attorneys' fees in the amount of $ 1,764.65 , and Court Costs.

[Remainder of Page intentionally left blank]

3

Plaintiff shall also have and recover a JUDGMENT against Defendant William Hebert on *AND DEFENDANT CR HOMES, INC.*

Count II of Plaintiff's Petition for Fraud the principal amount of $ _84,765.13_ plus

interest on said amount at 9% per annum until paid, Plaintiff's attorneys' fees in the amount of $

_1,764.65_ , ~~and $____~~ and Court Costs ~~all of which shall be Punitive Damages~~ *and Defendant CR Homes, Inc.*

against said Defendant William Hebert for ~~his~~ *their* intentional and malicious actions.

SO ORDERED:

Hon. Michael T. Jamison
Circuit Judge, Division 10

_8-1-07_
Date

4

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
## STATE OF MISSOURI

VKH, LLC,      )
         )
     Plaintiff,      )    Case No. 08SL-CC00769
         )
vs.          )    Division 20
         )
C.R. HOMES, INC., et al.      )
         )
     Defendants.      )

**FILED**
MAR 3 0 2009
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

### CONSENT JUDGMENT

Plaintiff appears by counsel. Defendants C.R. Homes, Inc., William T. Hebert, II and Mary Ann Hebert appear by consent. Defendants consent with Plaintiff to the entry of judgment in favor of the Plaintiff and against Defendants.

Wherefore, it is ordered, Adjudged and Decreed that the Plaintiff have and recover from the Defendants, jointly and severally, as follows:

Principal:    $84,756.13
Interest:    $21,191.15

**TOTAL:**    **$105,947.28**

Stay of execution upon payment of $2,207.24 per month for forty-eight (48) months beginning on August 1, 2009. Payment is due the first day of every month thereafter, with the final payment due July 1, 2013.

C.R. HOMES, INC.          VKH, LLC

By: _____    By: _____
William T. Hebert, II, President      Shirley Harrell, Manager

_____      _____
William T. Hebert, II, Individually      Mary Ann Hebert, Individually

**SO ORDERED**

_____ Date: 3-30-09
Hon. Colleen Dolan

Exhibit 4